IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ENVISION GAMING TECHNOLOGIES, INC.,** Plaintiff, | § | |
| v. | § | Civil Action No. 3:05-CV-0902-L |
| **INFINITY GROUP, INC**, and **GAMING FINANCE ASSOCIATES, INC.,** Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before this court is Defendant Infinity Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"), filed November 14, 2005. After careful consideration of the motion, briefs, appendices, response, reply, record and the applicable law, the court **grants** Infinity's Motion to Dismiss.

## I. BACKGROUND

This is a patent infringement dispute. Plaintiff Envision Gaming Technologies, Inc. ("Plaintiff" or "Envision") filed this action May 4, 2005 against two defendants, Infinity Group, Inc. ("Infinity" or "Defendant Infinity") and Gaming Finance Associates, Inc. ("GFA" or "Defendant GFA"). Licensee Envision, through its Second Amended Complaint, filed October 4, 2005, seeks a declaratory judgment against Infinity, which holds two related patents covering a "re-spin" gaming technology for electronic slot machines. At issue between the three named parties to this suit is whether GFA properly obtained licensing rights from Infinity, or rights to a similar patent from one

of Infinity's former officers, and thus granted a legal license on re-spin technology to Envision.[1] Infinity asserts that it, alone, holds the exclusive right to license the technology and contacted Envision about the potential infringement in April 2005. Envision now seeks a declaratory judgment that its "second-spin" gaming device, which it produces for use in casinos, does not infringe upon any Infinity patents, or, alternatively, that it has the right to use such technology under a valid licensing agreement with GFA. Additionally, Envision seeks damages under a state law claim that Infinity tortiously interfered with Envision's contracts by contacting Envision customers about the potential infringement. Defendant Infinity filed its Motion to Dismiss for Lack of Personal Jurisdiction on November 14, 2005. Defendant GFA has not joined the current motion or filed briefs related to the Motion to Dismiss. Accordingly, the court does not discuss GFA's role in the lawsuit.

Envision is an Oklahoma corporation with its stated principal place of business in Texas. Infinity is a New Mexico corporation with its principal place of business in New Mexico. Infinity's contacts with Texas residents consists of the following agreed facts.[2] In April 2005, an Infinity officer in New Mexico called an Envision officer in Texas to discuss Envision's distribution of casino slot machines using the re-spin technology. During the month of April, the parties exchanged approximately ten telephone calls (between New Mexico and Texas) to discuss the issue. Twice in that same month, an Infinity officer flew to Dallas, Texas, to meet with an Envision officer for

---

[1]Envision's complaint includes details about the transfer of licensing rights between Infinity and GFA, along with facts about separate patent rights on similar technology passing from a former Infinity Officer to GFA; however, since those facts bear no relation to the issue of personal jurisdiction involved in the current motion, the court has condensed the dispute to these basic facts.

[2]The parties dispute the nature of Infinity's contacts. Envision asserts that Infinity has made multiple threatening communications related to the instant patent dispute, while Infinity characterizes them as mere inquiries. Based on the pleadings, motions, affidavits, declarations and record before the court, the recited facts simply summarize the facts *recognized* by both parties.

further discussions. In May, Infinity sent letters to Envision customers, casinos in Oklahoma, informing them of the possible patent infringement and dispute. Prior to and separate from the current patent dispute, an Infinity officer twice met with an unrelated third party, MegaBingo, Inc., in Austin, Texas, to negotiate a licensing agreement. MegaBingo is a Delaware corporation with an office in Austin, Texas. Infinity states its agreement with MegaBingo covers distribution of casino-style games using Infinity technology in Oklahoma and "other states where such games are legal." Affidavit of Natalie Morris, Infinity President and CEO, at 2 ("Morris Affidavit").

In its Motion to Dismiss, Infinity contends that this court lacks personal jurisdiction because it does not have minimum contacts with Texas sufficient to satisfy the Due Process requirements of the Fourteenth Amendment to the United States Constitution. Envision, on the other hand, contends that the motion should be denied because Infinity has sufficient specific contacts with Texas for this court to exercise personal jurisdiction over it without violating the Due Process Clause of the Fourteenth Amendment. For the reasons stated below, the court does not believe it has personal jurisdiction over Infinity.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1985); *Suart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima* facie case that personal jurisdiction is proper, *id.*, and proof by a preponderance of the evidence is not required. *Int'l Truck and Engine Corp. v.*

*Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (*citing WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his *prima facie* case, the burden then shifts to the defendant to present a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The court is aware that in deciding issues of personal jurisdiction in patent infringement cases, including declaratory judgment actions involving patent holders as defendants, the law of the Court of Appeals for the Federal Circuit applies. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). An examination of federal circuit case law, however, shows that the federal circuit essentially applies the same traditional analysis that all federal courts must follow when analyzing whether the exercise of personal jurisdiction comports with the due process requirements of the Constitution. *See, e.g., Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201-02 (Fed. Cir. 2003); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358-60 (Fed. Cir. 1998); *Akro*, 45 F.3d at 1543-45; *Beverly Hills Fan*, 21 F.3d at 1564-65.[3] Thus, this court will reference all

---

[3]The federal circuit diverges from other federal circuits in its personal jurisdiction analyses for patent cases in only one respect. When minimum contacts is alleged through a stream of commerce theory, the federal circuit refuses to follow either the "stream of commerce, plus" approach or the more relaxed "mere foreseeability" approach. Instead, the federal circuit takes a more middle-of-the-road approach, looking at other factors surrounding the defendant's involvement in placing its product into the stream of commerce. *See Beverly Hills Fan*, 21 F.3d at 1564. Since Envision has not asserted that Infinity established minimum

precedent-setting case law, not just the law of the federal circuit.

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356-57 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines*, 9 F.3d at 418 *(citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[4]

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

---

contacts with Texas through a stream of commerce theory, and no such analysis would apply, this court will adhere to the traditional personal jurisdiction analysis it applies to all cases.

[4]The federal circuit has occasionally broken down this two-pronged analysis into three parts: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair. *Silent Drive* 326, F.3d at 1202 (internal citations omitted). The federal circuit, however, has also pointed out that the "first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* (*citing Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). Thus, this court will proceed with the traditional two-pronged analysis first established by *International Shoe*.

'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction or those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). As noted above, once minimum contacts are established, a defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In fact, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *See Asahi*, 480 U.S. at 116; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

## B. Analysis

### 1. General Jurisdiction

A review of Plaintiff Envision's Second Amended Complaint and its Response to Infinity's Motion to Dismiss reveals that Envision contends only that this court has specific jurisdiction over Infinity. Envision states clearly that it "does not argue that general jurisdiction exists. Instead, Envision relies on the principle of specific jurisdiction." Envision's Response to Infinity's Motion to Dismiss for Lack of Personal Jurisdiction at 9. ("Envision's Response"). In light of this position taken by Envision, the court will not address any matters relating to general jurisdiction.

### 2. Specific Jurisdiction

Envision contends that the court has specific personal jurisdiction over Infinity based on several activities that Infinity allegedly purposefully directed at Texas residents, namely: (1) Infinity's approximately ten telephone conversations with Envision discussing the patent dispute, (2) the two trips to Dallas, Texas, by an Infinity officer to meet with an Envision officer to discuss the dispute, (3) Infinity's letters to Envision's casino customers in Oklahoma informing them of the patent dispute and possible infringement, and (4) Infinity's licensing agreement with MegaBingo, which included two negotiation trips to Austin, Texas, by an Infinity officer. According to Envision, Infinity's telephone calls and trips to Dallas form the basis for its first claim against Infinity, seeking a declaratory judgment of non-infringement. The letters Infinity sent to Oklahoma casinos form the bases for Envision's second claim of tortious interference with its customer contracts. As for the MegaBingo negotiations, Envision contends that the licensing agreement covers the same intellectual property at issue, and "would have required multiple communications" with Texas, each of which would have been "relevant to the specific personal jurisdiction inquiry" at hand.

Envision's Response at 10.

***a. Infinity's telephone conversations, trips to Dallas and letters to Envision customers***

Envision contends that a declaratory judgment action arising out of a cease-and-desist letter sent into a forum "is sufficient" to satisfy minimum contacts requirements. Envision's Response at 11. Envision's citations to authority on this point are misplaced. The federal circuit has established in patent cases that "the sending of letters threatening infringement litigation is *not* sufficient to confer personal jurisdiction." *Silent Drive*, 326 F.3d. at 1202 (*citing Red Wing Shoe*, 148 F.3d at 1359-60; *Inamed*, 249 F.3d at 1361) (emphasis added). "[E]ven though the letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters," such threats of infringement action, without more, will not create personal jurisdiction "because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice." *Id.* (citations omitted). The federal circuit in *Silent Drive* also specifically rejected plaintiff's assertion that separate letters sent to its customers threatening a patent infringement action by the defendant could satisfy the due process requirements for personal jurisdiction. *Id.*

In the present case, Envision has accused Infinity of threatening infringement litigation through approximately ten telephone conversations, two trips to Dallas and letters to Envision's customers. *See* Envision's Response at 4. Infinity denies that it ever "threatened" Envision or its customers with a patent infringement action . *See* Infinity's Answer to Envision's Second Amended Complaint at 4. The court, however, must resolve this conflict in favor of the plaintiff and take Envision's claim that Infinity "threatened" litigation as true. *See Bullion,* 895 F.2d at 217. Even so, the federal circuit has made clear that such threats, whether through cease-and-desist letters or telephone conversations, are simply not enough, on their own, to justify the court's exercise of

personal jurisdiction over the defendant. *See, e.g.*, *Silent Drive*, 326 F.3d at 1202; *Red Wing Shoe*, 148 F.3d at 1357-58.

In *Silent Drive*, the defendant patent-holder not only sent letters to the plaintiff and the plaintiff's customers, but had obtained an injunction against the plaintiff from a court in the forum state for a separate misappropriation of trade secrets claim and had other "sporadic" contacts with the forum state, *id.* at 1202. The court, nevertheless, rejected the plaintiff's assertion that personal jurisdiction existed over that plaintiff. *Id.* To exercise personal jurisdiction over the defendant for sending letters informing the plaintiff and its customers of the patent infringement would violate the due process requirements for fair play and substantial justice, the court determined. *Id.* Also, while the defendant may have "availed" itself of the protections of the forum state's court by obtaining the trade secrets injunction over the plaintiff, that action was not related to the patent claim, and also could not confer independent personal jurisdiction. *Id.* Likewise, the court in *Red Wing Shoe* held no personal jurisdiction existed over a defendant who sent warning letters to the plaintiff and separately had thirty-four licensees who sold products in the forum state of Minnesota. As the court pointed out, "doing business with a company that does business in Minnesota is not the same as doing business in Minnesota." *Red Wing Shoe*, 148 F.3d at 1361. The same court did find the exercise of personal jurisdiction valid in *Inamed*, a case where the defendant patent holder threatened litigation after negotiations for a renewal of its licensing relationship with the plaintiff failed. *Inamed*, 249 F.3d at 1362. The court noted that the parties had previously negotiated four successful licensing agreements related to the same patents, which resulted in royalty payments of more than $1.3 million to the defendant over nine years. *Id.* at 1361. The court held those facts amounted to activities the defendant purposefully directed at the forum state. *Id.* at 1362. Thus, the

court concluded that the defendant's threats of infringement litigation, which gave rise to the declaratory judgment action in that case, arose directly from, and are related to, those prior activities the defendant purposefully directed at the forum. *Id.*

As with the defendants in *Silent Drive* and *Red Wing Shoe*, Defendant Infinity's contacts with Texas are not sufficient to justify this court's exercise of personal jurisdiction. It would offend traditional notions of "fair play and substantial justice" to force Infinity to submit to this court's jurisdiction simply because it called and wrote Texas residents to notify them of a potential patent infringement. Likewise, that an Infinity Officer twice flew to Dallas to meet with Envision in an attempt to resolve the dispute is insufficient. Both trips by Infinity CEO Morris were made for the express purpose of discussing the infringement matter. *See* Morris Affidavit at 3-4; Envision's Response at 6. Envision contends that its declaratory judgment claim arises directly out of these "threatening" activities by Infinity, Envision's Response at 11. These activities, alone, though, simply will not warrant the exercise of personal jurisdiction without violating the principles of fairness required by due process. Unlike the plaintiff and defendant in *Inamed*, Envision and Infinity had no prior contacts or ongoing business relationship that terminated with threats of litigation. Thus the "threats" prompting Envision's current action simply do not arise from or directly relate to any prior activity that Infinity purposefully directed at Texas.

Envision also contends that because its state tort claim for tortious interference arises directly out of Infinity's mailing of letters to its customers, those activities, alone, should support the exercise of personal jurisdiction. For this assertion, Envision cites authority holding that a defendant's purposefully directed activities do not have to be directed at the plaintiff to satisfy the jurisdictional inquiry. Envision's Response at 10. The court in *Silent Drive* rejected that plaintiff's

identical claim, because, without personal jurisdiction over the defendant in the patent declaratory judgment claim, the federal court pointed out that it has no independent subject matter jurisdiction over the supplemental common law tort claim. *Silent Drive*, 326 F.3d. at 1203. Likewise, this court has no independent jurisdiction over Envision's supplemental tort claim. Because this court has found Infinity's telephone conversations and letters to Envision's customers insufficient, on their own, to satisfy personal jurisdiction requirements, it cannot use those same acts to establish personal jurisdiction for Envision's supplemental claim of tortious interference. Furthermore, Infinity states that all of the letters sent to Envision customers were mailed only to casinos in Oklahoma, not Texas. Morris Affidavit at 4. Envision offers no evidence to contradict this assertion. This court agrees with the federal circuit that communications by a nonresident patent holder to notify potential infringers or their customers cannot, alone, justify an exercise of personal jurisdiction.

***b. Infinity's prior negotiations with MegaBingo***

Finally, this court disagrees with Envision's contention that Infinity's prior negotiation with MegaBingo and the two trips it made to Austin qualify as activities purposefully directed at Texas and arising out of or related to the current case. Envision asserts that the agreement Infinity made with MegaBingo "could not have been orchestrated without multiple communications" with Texas, each of which would have been "relevant to the specific personal jurisdiction inquiry" at hand. Envision's Response at 5, 10. For a valid exercise of specific personal jurisdiction to apply, Infinity's activities with MegaBingo must be purposefully directed at Texas and either "arise from" or "directly relate" to the current cause of action. *See Helicopteros*, 466 U.S. at 414. Envision, however, offers no evidence of the actual extent of negotiations actually engaged in by Infinity and MegaBingo, nor of how those negotiations would qualify as activities purposefully directed at

Texas. Infinity, on the other hand, states it made only the two trips to Austin while negotiating its licensing agreement with Delaware-based MegaBingo, which was ultimately signed in Nevada and involves the distribution of casino-style games primarily to Oklahoma. Morris Affidavit at 2. Since this court has no other information regarding the Infinity-MegaBingo negotiations, the long-term consequences of their contract or their course of dealing, it determines that none of those factors bears a continuous, systematic or substantial relationship with Texas. If they did, Envision would have urged the court to assert general personal jurisdiction over Infinity, which it expressly does not. *See* Envision's Response at 9. Envision simply contends that the MegaBingo licensing agreement arises from or directly relates to its declaratory judgment action because it "covers the same intellectual property at issue." Envision's Response at 10. Infinity, however, signed its licensing agreement with MegaBingo in January 2005, four months before it contacted Envision about its potential patent infringement. *See* Morris Affidavit at 2. Thus, Infinity's activities culminating in the MegaBingo contract could not have *arisen from* the current dispute. The MegaBingo contract "relates" to the current dispute only insofar as it involves licensing of the same intellectual property at issue. That two subject matters may be related does not make the *activity* surrounding those subject maters related. That one licensing agreement may cover the same intellectual property at issue in a separate, subsequent, patent dispute does not make the *negotiation* of the first agreement "related" to the *communications* in the separate, second dispute.

Even if the court adopts Envision's view that Infinity's negotiation of the MegaBingo license amounted to activity purposely directed at Texas, that activity does not *relate* to Infinity's communications with Envision about a potential infringement of its patents. Under Envision's interpretation of the "arising from or directly related to" requirement, a businessperson with no ties

to Texas could be haled into a Texas court for merely negotiating a contract while stopped on a layover at a local airport, so long as the subject of the suit "relates" to the contract he negotiated.[5] Such an interpretation would directly contradict the Supreme Court's holding that personal jurisdiction will not lie against defendants "solely as a result of random, fortuitous or attenuated" contacts with a forum state. *See Burger King*, 471 U.S. at 475. Instead, the Supreme Court in *Burger King* emphasized the need for a "highly realistic" approach to determine whether a defendant "purposefully" established the necessary minimum contacts by looking at the contracting party's "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 478. Applying this authority to this case, the court is convinced that Envision has not made a prima facie case of *in personam* jurisdiction. As noted above, Envision has presented this court with no evidence that Infinity's dealings with MegaBingo were either purposefully directed at Texas or substantial enough to meet the level of activity required for an exercise of personal jurisdiction. The evidence presented by Envision is simply too attenuated to establish that Infinity, by entering into a prior contract with MegaBingo (signed in Nevada, covering distribution of games primarily in Oklahoma), purposefully availed itself of the benefits and protections of Texas law.

[5]Envision offers no evidence that all or a portion of the Infinity-MegaBingo contract was to be performed in Texas.

## III. CONCLUSION

For the reasons stated herein, the court determines that Envision has not established the requisite minimum contacts to warrant the exercise of specific personal jurisdiction by this court over Defendant Infinity. Accordingly, the court **grants** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and **dismisses without prejudice** this action against Defendant Infinity.

**It is so ordered** this 12th day of September, 2006.

Sam A. Lindsay
United States District Judge